**UNITED STATES of America, Appellee,**

v.

**Mario S. REED, Appellant.**

No. 77–1928.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1978.

Decided April 7, 1978.

mand this case to the district court for further proceedings.

## I.

In 1974, Reed, then age twenty-two, pleaded guilty to a charge of forging an endorsement on a United States Treasury check in violation of 18 U.S.C. § 495 (1976). The district court suspended imposition of sentence and placed Reed on probation for five years. In addition to the usual conditions of probation,[1] the court required that "[r]estitution be made during the period of probation," that Reed "shall be regularly and gainfully employed and failure to be gainfully employed shall be a basis for revocation of probation," and that Reed report "[e]ach month as directed by Probation Officer."

Reed apparently satisfied the conditions of his probation until early 1977 when he failed to report to his probation officer on several occasions as directed and to satisfy the employment requirement. On November 14, 1977, his probation officer sought a probation violator's warrant on the following grounds:

Failure to maintain employment.

Failure to notify of address change.

Failure to report as directed.

The court ordered Reed arrested and conducted an evidentiary hearing. The probation officer's testimony at the hearing indicated that Reed had failed to report precisely as directed during 1977. On June 16, 1977, the probation officer had mailed the following letter:

Dear Mr. Reed:

> When out of work you shall notify your probation officer at once. You shall consult him prior to job changes.
>
> (4) You shall not leave the judicial district without permission of the probation officer.
>
> (5) You shall notify your probation officer immediately of any change in your place of residence.
>
> (6) You shall follow the probation officer's instructions.
>
> (7) You shall report to the probation officer as directed.

Richard H. Ulrich, Shifrin, Treiman, Bamburg & Dempsey, St. Louis, Mo., for appellant; David L. Baylard, St. Louis, Mo., on the brief.

Frederick Buckles, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on the brief.

Before LAY and BRIGHT, Circuit Judges, and VAN SICKLE, District Judge.*

BRIGHT, Circuit Judge.

Mario S. Reed appeals from an order revoking his probation and sentencing him to three years' imprisonment. For reasons stated below, we vacate the order and re-

---

* BRUCE M. VAN SICKLE, United States District Judge, District of North Dakota, sitting by designation.

1.     (1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

(2) You shall associate only with law-abiding persons and maintain reasonable hours.

(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability.

A review of your file shows that you have missed the last four scheduled office visits on April 18, 1977; May 16, 1977; May 26, 1977 and June 1st, 1977. You last reported to this office on April 27, 1977, and as it was not scheduled I was out of the office. You subsequently failed to call as instructed. Repeated home visits have largely been unsuccessful in contacting you and during a home visit on May 23, 1977, I advised you that several employment leads were available but you failed to contact me for specific details. As you have been unemployed for some time this indicates you are not interested in working. It is, however, noted on your May report you claim to be employed now. You are instructed to report to the probation office on Monday, June 20, 1977, between the hours of 10:00 o'clock A.M. and 12:00 noon or 2:30 P.M. to 6:30 P.M. Bring your check stubs, if any, and confirmation of starting date. Continuation of missed appointments is not acceptable.

Reed appeared as directed on June 20 and claimed he had obtained employment with the St. Louis Housing Authority. He could not, however, verify his employment, and the probation officer did not call the employer to verify Reed's claim for fear of jeopardizing the job opportunity. Reed promised to bring in check stubs as verification of employment but failed to do so.

The next visit between Reed and the probation officer occurred on August 29, 1977, again at the probation office. The probation officer advised Reed that he was not meeting the conditions of his probation because he was unemployed and had repeatedly missed office visits. At that time the officer directed Reed to report to the probation office at least every other week until further notice and also referred Reed to the Ex-Offenders Clearing House for employment possibilities, leads, or job training. Reed did not report again to the probation office. On September 27, after several attempts to visit Reed at his apartment, the probation officer learned from the apartment manager that Reed had been evicted a week earlier and had left no forwarding address. Shortly thereafter, the probation officer petitioned the district court for the probation violator's warrant.

At the close of the probation officer's direct testimony, the district judge asked whether Reed had made any restitution. The probation officer testified as follows:

The initial amount of the restitution was $561.92. The remaining balance is $462.92 with the last payment being made September 18, 1976.

Reed's testimony offered explanations for each of the apparent deficiencies in meeting the conditions of his probation. He testified that he had attempted to obtain employment and, indeed, had obtained a job as a salesman, but he had failed to earn any money on a commission basis. He admitted that he had not reported to the Ex-Offenders Clearing House, but the referral was not, as he understood it, mandatory. Some of his failures to report to the probation officer were due to illness and transportation problems. He denied receiving the June 16th letter, possibly because a recent change of address by his wife may have affected his own mail. He further testified that the apartment manager had attempted to evict him because of his activities in organizing a tenants' group, but he nevertheless still received mail and slept at his apartment. He called a witness who testified that he saw Reed at the apartment after the probation officer had attempted to locate him there.

At the close of the hearing, the court made the following statement:

THE COURT: All right. The probation will be revoked for the reason that the defendant has not made restitution that he should have made during the period of probation; his failure to report; his failure to advise the office and respond to their requests for his appointment to be made.

The court then entered an order revoking probation and sentencing Reed to three years' imprisonment.

## II.

On this appeal, Reed first argues that the district court erred in basing the revocation on a reason not charged against him by his probation officer, *i. e.,* failure to make restitution.

■ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that parole revocation is subject to due process protections, including a hearing and notice of the charges against the parolee. The Court later incorporated these same procedural protections into state probation revocation proceedings in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Rule 32(f) of the Federal Rules of Criminal Procedure incorporates due process requirements into federal probation revocation proceedings:

> The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed. [Fed.R.Crim.P. 32(f).]

In addition to notice and a hearing, due process requires adequate proof of the alleged violations of the conditions of probation. *United States v. Strada,* 503 F.2d 1081, 1085 (8th Cir. 1974); *United States v. Garza,* 484 F.2d 88, 89 (5th Cir. 1973).

Reed did not receive prior notice that he was charged with failure to make restitution. The probation officer did not list failure to make restitution as a violation of the conditions of Reed's probation. Not until the district court raised the question of restitution during the hearing did Reed have notice that his failure to have made full restitution could result in loss of his liberty.

■ In addition, and even more importantly, the record shows no substantive violation of the restitution condition. The sentence entered on December 20, 1974, required restitution "during the period of pro-

bation," which was to last five years. Because the probation period has not yet ended, Reed's failure to make full restitution does not constitute a violation of the conditions of his probation.

■ For these reasons, the trial court erred in revoking probation on grounds of Reed's failure to make restitution.

## III.

Reed also contends that he had attempted in good faith to comply with the reporting requirements of his probation and that his failure to report, therefore, did not constitute adequate independent grounds for revocation.

The decision to place an offender on probation or parole represents a conclusion by the sentencing judge that the offender will benefit from a program of supervision and treatment designed to aid that individual in becoming a constructive member of society. These programs, if successful, benefit not only the individual offenders but also society as a whole, for the cost of maintaining a prisoner in a federal prison has been calculated at ten times that of supervising an offender in a community-based program.[2] The Supreme Court's comments on the nature of parole and the parole officer's duties apply to probation as well:

> [P]arole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison. * * *
>
> * * * * * *
>
> The parole officers are part of the administrative system designed to assist parolees and to offer them guidance. The conditions of parole serve a dual purpose; they prohibit, either absolutely or conditionally, behavior that is deemed danger-

---

**2.** *Annual Report of the Director of the Administrative Office of the United States Courts* 181 (1970). According to information from the United States Bureau of Prisons, the cost of

care and maintenance of a single inmate in a federal prison in fiscal year 1977 averaged $21 per day or $7,665 per year. This figure does not include capital costs.

ous to the restoration of the individual into normal society. And through the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided with information about the parolee and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development. [*Morrissey v. Brewer, supra,* 408 U.S. at 477–78, 92 S.Ct. at 2598–99.]

■ Because the probation and parole programs are such valuable components of the federal criminal justice system, the decision to revoke should not be undertaken lightly:

Typically, a parolee will be counseled to abide by the conditions of parole, and the parole officer ordinarily does not take steps to have parole revoked unless he thinks that the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity.

\* \* \*

Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole. The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? The first step is relatively simple; the second is more complex. The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antiso-

cial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary. [*Id.* at 479–80, 92 S.Ct. at 2599–2600.]

These comments relating to parole apply with even greater force to probation, for the chances of successful rehabilitation are substantially greater for the offender who is granted probation than for the offender who is imprisoned and then released early on parole.[3]

■ The decision to revoke probation should not merely be a reflexive reaction to an accumulation of technical violations of the conditions imposed upon the offender. That approach would be inconsistent with and detrimental to the goals of the probation program:

While presumably it would be inappropriate for a field agent *never* to revoke, the whole thrust of the probation-parole movement is to keep men in the community, working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail. [*Gagnon v. Scarpelli, supra,* 411 U.S. at 785, 93 S.Ct. at 1761, *quoting* F. Remington, D. Newman, E. Kimball, M. Melli & H. Goldstein, *Criminal Justice Administration, Materials and Cases* 910 (1969).]

Rather, probation should be revoked only in those instances in which the offender's behavior demonstrates that he or she "cannot be counted on to avoid antisocial activity." *Morrissey v. Brewer, supra,* 408 U.S. at 479, 92 S.Ct. at 2599.

■ We do not know whether the district court considered Reed's other violations of his probation conditions as serious enough

---

**3.** The Report to the Congress by the Comptroller General of the United States, *Probation and Parole Activities Need To Be Better Managed* 6 (1977) (hereinafter cited as *"Report"*), indicates a success rate of 71% for probationers and 59% for parolees. The *Report* was based

on studies by the General Accounting Office of five district probation offices considered to be representative of the Nation as a whole: California Central, Georgia Northern, Illinois Northern, Washington, D. C., and Washington Western.

to justify revocation. Reed had successfully fulfilled his probation obligations for more than two years. The decision to revoke his probation was based not on commission of a new crime or other egregiously antisocial behavior, but merely on Reed's failure to report, to give notice of an address change, to find employment, and to make restitution. The *sua sponte* interjection of the failure of restitution issue into the hearing could suggest that the district court considered the grounds asserted in the petition to revoke probation to be of insufficient import to require revocation of Reed's probation.

We therefore remand the case to the district court to consider whether, apart from the restitution question, Reed's probation should be revoked. On remand, the district court may wish to reevaluate whether Reed's chances of becoming a useful citizen would be better if he successfully completes his probation than if he is imprisoned, and whether probation may yet be successful if Reed is provided additional in-the-field supervision,[4] more intensive counseling to assist with his personal problems, and more rigorous guidelines on the terms of his probation. In making these comments, we in no way intend to imply that Reed did not receive adequate guidance and supervision by his probation officer. The record indicates that the probation officer made unusual efforts to keep in contact with Reed.

Under these circumstances, we think it appropriate to vacate the order revoking probation and sentencing Reed to three years of imprisonment. We remand the case to the district court for a further probation revocation hearing or other proceedings consistent with this opinion.[5] Let our mandate issue forthwith.

4. Need exists for greater supervision and improved rehabilitative services in the federal probation system. In his *Report,* the Comptroller General made the following observations:

> Probation officers have numerous duties which detract from their ability to provide adequate supervision. Supervision must be emphasized more so that probation officers can better assure that probation or parole conditions are met and needed rehabilitation services are provided. Contacting offenders more frequently may require added resources, but first an attempt should be made to improve the allocation of the probation officer's time among his various duties.

> \* \* \* \* \* \*

> We recognize that probation officers have duties other than supervision to perform. However, we believe that supervision must be emphasized more than it is now. While achieving higher levels of supervisory contact may require more resources, before additional resources are requested CUSPOs [Chief United States Probation Officers] should be required to evaluate how probation officers are using their time and how they can improve the level of supervision being given to offenders. Innovative techniques being used by certain districts which improve effectiveness should be evaluated for possible use in other districts.

> \* \* \* \* \* \*

> Probationers and parolees often have particular problems—family, medical, academic,

vocational, etc.—which need to be professionally treated. Studies done in this area show that such treatment can help probationers and parolees move out of the criminal justice system. However, not enough professional treatment is being provided in Federal supervision programs. We found that some probation officers were not devoting the time necessary to plan for offenders to receive needed professional help. Also, rehabilitation services often were not available in the community from public service organizations or Government programs. [*Report* at 9, 16, 23.]

The Administrative Office of the United States Courts, under whose aegis the Probation Division operates, concurred wholeheartedly in these recommendations. [*Id.* App. II at 58.]

5. Because we are remanding the case for further proceedings, we need not reach a third issue raised by Reed: that the three charges listed on the probation violator's warrant did not provide adequate notice of the charges against him. He argues, for example, that he could not adequately prepare a defense because he was not notified of the dates when he allegedly failed to report. We doubt that this contention carries much merit, but in any event, any such defect in the original notice has now been cured, for the probation officer's testimony at the first hearing has apprised him in detail of the charges against him.