# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1855

_____

United States of America,         *
                                      *

         Appellee,       *

                                      *   Appeal from the United States

     v.                       *   District Court for the

                                      *   Northern District of Iowa.

Nathan Melton,            *

                                      *

         Appellant.     *

_____

Submitted: October 21, 2011
Filed: January 30, 2012

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER[1], District Judge.

_____

SHEPHERD, Circuit Judge.

Nathan Melton was convicted in 2008 of bank fraud, in violation of 18 U.S.C. § 1344. His sentence was subsequently reduced and he was placed on supervised release, but his supervised release has been twice revoked. He appeals the second

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

revocation of his supervised release and appeals the district court's[2] post revocation sentence, which included a special condition of supervised release requiring him to reside in a residential reentry center for a third time upon his release.[3] We affirm.

---

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

[3]Melton has served his post revocation six month sentence and has completed the special condition of his supervised release requiring him to complete a 120 day term at a residential reentry center. Thus, we must address the issue of mootness because our "judicial power extends only to actual 'cases' and 'controversies.'" Turner v. Rogers, 131 S. Ct. 2507, 2514 (2011) (citing Massachusetts v. Mellon, 262 U.S. 447, 480 (1923)). A dispute is not moot when it "falls within a special category of disputes that are 'capable of repetition' while 'evading review.'" Id. at 2514-15 (quoting S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)). A dispute is capable of repetition but evades review when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Id. at 2515 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)). Melton's claim is the type of dispute that is too short to be fully litigated prior to its cessation or expiration. The post revocation judgment that Melton appeals was entered on April 5, 2011, and Melton was placed in custody on May 5, 2011. Melton's appeal was submitted to this court on October 21, 2011. At that point, Melton had only two weeks remaining in his six-month prison term. Additionally, Melton completed his term at the halfway center on January 3, 2011, prior to the filing of this opinion. From these facts, it is clear that the actions of which Melton complains are so short in duration that they evade review. As to the second requirement, there is a reasonable likelihood that Melton will once again be subjected to the same action. Melton's supervised release has been revoked twice. Melton, now on his third supervised release, stands a reasonable likelihood of having that release revoked if he does not comply with the terms of his release. For these reasons, we find Melton's claim is capable of repetition but evading review and is therefore alive and not moot.

I.

In December 2008, appellant Nathan Melton pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344. He was sentenced to 18 months imprisonment with 5 years of supervised release and ordered to pay $9,588 in restitution jointly and severally with other defendants. In February 2010, the district court reduced Melton's sentence to time served for his assistance in a government investigation pursuant to Federal Rule of Criminal Procedure 35(b), and Melton began his supervised release. Melton's conditions of supervised release required him to reside in a residential reentry center for 120 days after his release from prison and specified that he must follow all rules and regulations of the reentry center. The court revoked Melton's supervised release in June 2010 for his failure to comply with the reentry center's rules, failure to seek employment, and failure to participate in substance abuse treatment. The court again sentenced Melton to six months imprisonment, with supervised release, including a condition that he reside in a residential reentry center for 120 days upon his release.

Melton was released on December 13, 2010, and again began his residential reentry program at the same center where he resided during his first release. On April 4, 2011, Melton's supervised release was revoked for a second time. At the hearing to revoke his supervised release, Melton admitted to violating several of the rules of the reentry center, including: refusing to obey house rules governing when he could occupy group areas; refusing to comply with staff members' orders; cursing a center staff member, and refusing to do his kitchen chores. Melton also admitted to failing to seek employment and failing to attend a vocational training session. He also admitted to signing out of the reentry center and being "out of place of assignment" for nearly four hours. In total, Melton admitted to ten violations of his supervised release.

Based on these admissions, the district court again revoked Melton's supervised release and sentenced him to six months imprisonment, with a term of supervised release and a special condition that he reside in a residential reentry center upon release for 120 days. Melton appeals this revocation and the imposition of the special condition of supervised release.

## II.

We review a district court's decision to revoke a defendant's supervised release for an abuse of discretion. United States v. Rhone, 647 F.3d 777, 779 (8th Cir. 2011).

Melton admitted to ten violations of his supervised release; however, he argues his violations were merely technical. Melton bases his technicality argument on this court's opinion in United States v. Reed, 573 F.2d 1020 (8th Cir. 1978). In Reed, we stated that a court's "decision to revoke probation should not merely be a reflexive reaction to an accumulation of technical violations of the conditions imposed upon the offender." Id. at 1024.

However, we have held that violations similar to Melton's are not merely technical. In United States v. Burkhalter, 588 F.2d 604 (8th Cir. 1978), we found a defendant's tardiness and absences from a vocational training program coupled with his violation of a residential reentry center's rules were sufficient to support the revocation of his supervised release. Burkhalter, 588 F.2d at 606-07. In responding to Reed, we noted, "[a]lthough appellant['s] . . . violations are not particularly serious in terms of their danger to society, his behavior indicates a pervasive unwillingness to follow the rehabilitation program." Id.

In this case, the district court noted that Melton's violations were Grade C violations. The sentencing guidelines give district courts discretion as to whether to revoke a defendant's sentence for Grade C violations. See United States Sentencing

-4-

Commission, Guidelines Manual, §7B1.3(a)(2). The district court found revocation of Melton's sentence was appropriate stating:

> The problem here seems to be that [defendant] is a person who does what [he] wants to do. He does not abide by any directives of the [reentry house] staff, doesn't do his jobs, his in-house jobs at the [center]. When he's told to do something, he refuses and is disrespectful to the staff.

The district court did not make a "reflexive reaction to an accumulation of technical violations" like the one we condemned in Reed but instead made a reasoned finding that Melton's repeated actions indicated a stubborn unwillingness to comply with the conditions of his supervised release. Pursuant to our opinion in Burkhalter, actions indicating such a persistent and "pervasive unwillingness" to comply with court orders and the orders of a reentry center are not technical violations and may warrant the revocation of a supervised release.

Further, Melton's violations were not limited to violating the reentry center's rules and disobeying the center's staff. Melton violated two additional conditions of his supervised release: the first required that he "work regularly at a lawful occupation, unless excused by the probation officer," and the second required that he pay his share of the $9,598 restitution judgment. Melton admitted that he was only employed for two weeks during his near 120 day term at the center and admitted to failing to seek employment, though he did have a job arranged to begin at the end of his time at the reentry center. He also admitted to failing to pay any portion of his restitution judgment. A defendant's failure to put forth a good faith effort to seek employment to pay a restitution judgment is a valid ground for revoking a supervised release. United States v. Montgomery, 532 F.3d 811, 813 (8th Cir. 2008); United States v. Leigh, 276 F.3d 1011, 1012-13 (8th Cir. 2002) (per curiam). Though Melton had a job arranged to begin after his four-month term at the reentry center, he was not employed during his time at the center and admitted to not seeking

-5-

employment. The conditions of his supervised release stated that he "shall be lawfully employed" and did not give Melton a pass to wait to begin employment after his time at the reentry center. He should have made a good faith effort to find immediate employment during the gap between his imprisonment and his promised employment so that he could begin payment on the restitution judgment, as required by the terms of his release.

Melton admitted to violating ten conditions of his supervised release. Those violations placed the revocation of Melton's supervised release within the sound discretion of the district court. We find the district court did not abuse its discretion in revoking Melton's supervised release.

## III.

Melton also argues that the court erred in imposing a special condition of supervised release that will require him to go back to the same residential reentry center for a third time upon his release. Melton argues he is clearly not a good candidate for the reentry center because he has failed there twice and because his sentence of only six months imprisonment is not lengthy enough to require reentry training. Melton did not object to this condition of supervised release at sentencing.

Where a defendant does not object to a special condition of supervised release at sentencing, we review the court's imposition of the condition for plain error. United States v. Curry, 627 F.3d 312, 314 (8th Cir. 2010) (per curiam). Under plain error review, "[w]e will reverse only if [the defendant] shows that the district court committed an error that was plain, that affected his substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Garcia, 646 F.3d 1061, 1068-69 (8th Cir. 2011).

-6-

"The district court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet the requirements of 18 U.S.C. § 3583(d)." United States v. Boston, 494 F.3d 660, 667 (8th Cir. 2007). Section 3583(d) requires that the conditions of supervised release be "reasonably related" to the factors listed in 18 U.S.C. §§ 3553(a)(1) and (a)(2)(B)-(D).[4] See 18 U.S.C. § 3583(d)(1). Additionally, "the condition[s of release] may not result in any 'greater deprivation of liberty than is reasonably necessary' for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs." Boston, 494 F.3d at 667 (quoting 18 U.S.C. § 3583 (d)(2)). Lastly, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3).

Requiring a defendant to temporarily reside at a residential reentry center as a condition of supervised release is a tool expressly authorized by statute and by the Sentencing Guidelines. See 18 U.S.C. § 3563(b)(11); USSG §5B1.3(e)(1); United States v. McFarlin, 535 F.3d 808, 811-12 (8th Cir. 2008). Additionally, we have regularly upheld the requirement of a term in a residential reentry center as a reasonable condition of supervised release. See, e.g., United States v. Vanhorn, 641 F.3d 296, 297 (8th Cir. 2011).

In ordering Melton to reside in a residential reentry center as a condition of his supervised release, the district court followed the procedure set forth in section 3583 for imposing conditions of supervised release. The court expressly stated that it had considered the section 3553 factors in entering the sentence and addressed the

---

[4]The factors contained in section 3553(a)(1) and (a)(2)(B)-(D) that must be considered by a district court in imposing conditions of supervised release are: the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D); see also United States v. Boston, 494 F.3d 660, 667 (8th Cir. 2007).

defendant's history and characteristics during the revocation hearing. After it considered the factors as required by section 3583(d), requiring Melton to reside in a residential reentry center as a condition of supervised release was within the discretion of the court. Melton has not cited any cases that indicate that a court errs by entering a special condition of release that requires a defendant to reside in a residential reentry center merely because he has failed to succeed there in the past.

For these reasons, we find the court did not plainly err when it ordered Melton to reside in the residential reentry center for a third time.

## IV.

We affirm the revocation of Melton's supervised release and the court's entry of a special condition of supervised release requiring Melton to reside in a residential reentry center for 120 days after his release.

_____