# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2214

_____

United States of America,

*Plaintiff - Appellee,*

v.

Joel Edward Kimball,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: April 12, 2016
Filed: July 27, 2016

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and BOUGH,[1] District Judge.

_____

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

COLLOTON, Circuit Judge.

After Joel Kimball violated the terms of his supervised release, the district court[2] revoked his supervision and sentenced him to 8 months' imprisonment followed by 4 years of supervised release. Kimball appeals, arguing that the district court abused its discretion in revoking his supervised release and that his sentence is unreasonable. We affirm.

In 2008, Kimball pleaded guilty to one count of failure to register as a sex offender. *See* 18 U.S.C. § 2250(a). He served a term of 24 months' imprisonment and commenced a ten-year term of supervised release. In 2014, the government petitioned to revoke Kimball's supervised release, alleging that he had tested positive for a controlled substance. The district court found that Kimball had used a controlled substance, revoked his release, and sentenced him to 8 months' imprisonment and 4 more years of supervised release. The court also added a condition that Kimball reside at a residential reentry center for up to 120 days following his release from imprisonment.

When released in April 2015, Kimball reported to a residential reentry center in Waterloo, Iowa. Residential probation officer Kari Yates testified that Kimball was argumentative and that he expressed frustration when told that he was required to stay at the center for 120 days. He refused to sign his weekly case notes and a federal rent statement, answer questions about his employment, or acknowledge a reminder about an upcoming appointment. Kimball also failed to turn over his paycheck to the center as required, and he did not attend a scheduled meeting with Yates.

---

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Based on this conduct, the center's hearing committee determined that Kimball had disobeyed lawful orders by failing to sign required paperwork, had been in unauthorized possession of money by not turning his paycheck over to center staff, and had failed to comply with special conditions or participate in treatment by failing to attend a meeting with Yates. Kimball admitted two of the violations but claimed that he was never informed of the appointment with Yates so was not blameworthy for failing to attend. He conceded that he was uncooperative and disrespectful to Yates. Kimball also was loud and argumentative with another probation officer, Brian Draves, on several occasions when Draves informed him that he would not be allowed to return to his previous apartment because he had used drugs there.

Within a month of Kimball's arrival at the reentry center, the government petitioned to revoke Kimball's supervised release based on his rule violations and his uncooperative manner. The district court determined that Kimball violated the terms of his supervision based on the undisputed rule violations; the court did not consider Kimball's missed appointment in making its decision. The court calculated Kimball's advisory guideline range of imprisonment for the violations to be 4 to 10 months. Because it was Kimball's second revocation, and because he had committed violations within a few days of his most recent release, the court sentenced Kimball to 8 months' imprisonment and another 4 years of supervised release. The court also reimposed the condition requiring Kimball to live at a residential reentry center for up to 120 days upon his release.

Kimball argues that the district court should not have revoked his supervision, because there were mitigating circumstances. He claims that his failure to cooperate with Yates was due in part to his frustration that Yates said he would have to stay at the center for 120 days. He points to the district court's statement at his prior revocation hearing that he could leave the reentry center early if he made a smooth transition to the community, got a job and place to live, and was not a threat to the community. The court also stated, however, that Kimball "must abide by all rules and

regulations of that facility." Kimball admitted to violating rules of the reentry center, and the court did not abuse its discretion in rejecting his justification for his actions. Kimball also contends that he was not informed of the center's rules and procedures, but the district court permissibly found based on Yates's testimony that Kimball received and signed a copy of the facility's rules.

Kimball next asserts that the district court should not have revoked his supervision because he did not violate any law and the violations he committed did not warrant revocation. He cites *United States v. Reed*, 573 F.2d 1020, 1024 (8th Cir. 1978), for the proposition that revocation "should not merely be a reflexive reaction to an accumulation of technical violations of the conditions imposed upon the offender." Even where a defendant's violations "are not particularly serious in terms of their danger to society," however, a district court may revoke supervision where a defendant's actions express "a pervasive unwillingness to follow the rehabilitation program." *United States v. Burkhalter*, 588 F.2d 604, 607 (8th Cir. 1978).

The district court's findings about Kimball's history show this sort of pervasive unwillingness. In 2014, before revoking Kimball's supervised release, the court imposed incremental sanctions in response to Kimball's repeated violations of his drug treatment program. The measured approach did not work, and the court eventually revoked Kimball's release after continued violations. The court observed then that it had treated Kimball "extremely leniently" despite his repeated lies to probation officers and the court about his drug use. In 2015, after his release from imprisonment, Kimball began to violate rules of the reentry center shortly after he arrived, and he repeatedly was uncooperative with probation officers. The court found that Kimball was "[u]nusually frustrated and unusually emotional" in his testimony at the revocation hearing, and observed that Kimball had a history of displaying anger and difficulty with self-control. Throughout his interactions with the court, Kimball thus expressed "a stubborn unwillingness to comply with the

conditions of his supervised release," *United States v. Melton*, 666 F.3d 513, 516 (8th Cir. 2012), and the court did not abuse its discretion in revoking his supervision.

Kimball also contends that his sentence is unreasonable. We review the reasonableness of Kimball's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007). Because Kimball's sentence is within the advisory guideline range, we presume that it is reasonable. *United States v. Scales*, 735 F.3d 1048, 1052 (8th Cir. 2013); *see Rita v. United States*, 551 U.S. 338, 347 (2007). Kimball argues that his sentence is unreasonable for the same reasons that he claims revocation was unwarranted in the first place. For the reasons already discussed, the district court did not abuse its discretion by imposing a sentence within the range recommended by the Sentencing Commission for a typical revocation offender.

Kimball further argues it was illogical for the court to reimpose the condition that he reside at a residential reentry center after finding that he would not follow the rules at such a center. He did not object to this condition at sentencing, so we review the claim for plain error. The court expressly considered Kimball's history and characteristics, the nature of his violations, and the factors identified in 18 U.S.C. § 3553(a) when imposing the condition. Although Kimball failed to succeed at the reentry center in 2015, temporary residence at such a center is designed to facilitate successful reentry to the community, and the court presumably believed that Kimball's chances of success outside of prison would be enhanced by a productive stint at a reentry center. It was not plain error for the court to require Kimball to reside at such a center again in the hope of better performance after his renewed incarceration. *Melton*, 666 F.3d at 518.

The judgment of the district court is affirmed.

_____