# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3742

_____

United States of America

*Plaintiff - Appellee*

v.

Janis Marie Kreitinger

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: October 16, 2017
Filed: December 18, 2017
[Unpublished]

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

PER CURIAM.

Janis Kreitinger appeals the second revocation of her supervised release, which the district court[1] ordered after she broke numerous rules at a residential reentry

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

center and otherwise violated the terms of her supervision. Kreitinger argues that her alleged misconduct included only "minor technical violations" that did not warrant revocation. Because we repeatedly have found similar conduct sufficient to justify revocation, we affirm.

In 2007, Kreitinger pleaded guilty to one count of aggravated identity theft and one count of credit-card fraud for racking up more than $3,000 in charges on a stolen credit card. The district court sentenced her to 48 months' imprisonment and three years of supervised release. In July 2015, less than three months into her original term of supervision, the United States Probation Office ("USPO") filed a revocation petition, alleging that Kreitinger violated multiple rules during a court-ordered stay at a residential reentry center. Over the course of two revocation hearings, the district court gave Kreitinger the opportunity to rectify her behavior without revoking her release. Despite this leniency, however, Kreitinger persisted in her refusal to comply with reentry-center rules and other conditions of her supervision. Thus, at her third revocation hearing, the district court revoked Kreitinger's release and sentenced her to seven additional months of imprisonment, to be followed by another year of supervised release. As a special condition for her second term of supervision, the court also required Kreitinger to return to a reentry center for 180 days.

This second round of supervised release began on May 13, 2016. Once again, after only three months, Kreitinger had accumulated an assortment of new violations, which prompted the USPO to file a second revocation petition. During the ensuing revocation hearing, the district court found that Kreitinger had committed virtually all of the misconduct alleged by the USPO, including: (1) that she violated the rules of the reentry center by possessing contraband, namely a food stamp card, a BioLife Visa debit card, and outside bedding; (2) that she attempted to steal chemical bottles from the reentry center; (3) that she made false statements to residential officers by lying about the stolen bottles and by claiming that she had permission to smoke when she did not; and (4) that she further violated the terms of her supervision by

attempting to associate with a felon through written correspondence. Based on these findings and her previous conduct, the court granted the revocation petition and sentenced Kreitinger to six months' imprisonment and one year of supervision. Kreitinger now appeals the revocation of her supervised release.[2]

"We review a district court's decision to revoke a defendant's supervised release for an abuse of discretion." *United States v. Melton*, 666 F.3d 513, 516 (8th Cir. 2012). Kreitinger notes that we have held that "probation revocation is appropriate only if the probationer's behavior demonstrates that he 'cannot be counted on to avoid antisocial activity,' and is not warranted by the mere accumulation of technical violations." *See United States v. Young*, 756 F.2d 64, 65 (8th Cir. 1985) (quoting *United States v. Reed*, 573 F.2d 1020, 1024 (8th Cir. 1978)); *see also Melton*, 666 F.3d at 516 (considering and rejecting a similar argument concerning technical violations related to a revocation of supervised release). Yet we also have recognized that "actions indicating . . . a persistent and 'pervasive unwillingness' to comply with court orders and the orders of a reentry center are not technical violations and may warrant the revocation of a supervised release." *See Melton*, 666 F.3d at 516 (quoting *United States v. Burkhalter*, 588 F.3d 604, 607 (8th Cir. 1978)); *United States v. Kimball*, 830 F.3d 747, 749-50 (8th Cir. 2016).

Based on the record before us, there is no basis for concluding that the district court made the kind of "'reflexive reaction to an accumulation of technical violations' [that] we condemned in *Reed*." *See Melton*, 666 F.3d at 516 (quoting *Reed*, 573 F.2d at 1024). Rather, the court made a reasoned finding that Kreitinger's litany of

---

[2]The Government suggests that Kreitinger separately challenges her new, below-guidelines revocation sentence as substantively unreasonable. However, a careful examination of Kreitinger's brief indicates that her appeal is limited to the revocation itself. Because she did not raise any arguments concerning the substantive reasonableness of her new sentence, we consider this issue waived and, accordingly, do not address it. *See United States v. Azure*, 539 F.3d 904, 912 (8th Cir. 2008).

reentry-center rule violations "indicated a stubborn unwillingness to comply with the conditions of [her] supervised release," *id.*, which included a specific special condition requiring her to "abide by all rules and regulations of the facility." Moreover, Kreitinger's violations were not limited to breaking the reentry center's rules and disobeying residential officers. She also admitted to attempting to send a letter to an inmate in federal prison, which constituted a separate violation of the conditions of her supervised release. Thus, Kreitinger's conduct placed the revocation determination squarely within the district court's sound discretion, *see id.* at 517, which it did not abuse in granting the USPO's second revocation petition.

Accordingly, we affirm the revocation of Kreitinger's supervised release.

_____