*United States v. Farooq*

# United States Court of Appeals
# for the Second Circuit

---

August Term 2022
Argued: November 23, 2022
Decided: January 30, 2023

No. 21-0707

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

KHAWAJA MUHAMMAD FAROOQ,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Eastern District of New York

---

Before:    KEARSE, PARK, and MENASHI, *Circuit Judges*.

Defendant-Appellant Khawaja Muhammad Farooq pled guilty to one count of extortion under 18 U.S.C. § 875(d) for threatening to disseminate nude photographs of Jane Doe if she did not return to a relationship with him.   Farooq now appeals, arguing that the plea proceedings were defective because the district court did not explain the "wrongfulness" element of extortion under *United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999).   He also challenges two special

conditions of supervised release on First Amendment grounds: (1) a requirement that Farooq seek retraction of articles he published about Jane Doe and her brother-in-law, John Doe, and (2) a requirement that he seek approval from the district court before publishing any further information about them.

We conclude as follows: First, the plea proceedings were not defective because the district court correctly determined that Farooq understood the "nature of each charge" to which he pled. Fed. R. Crim. P. 11(b)(1)(G). *Jackson* does not require a separate explanation of "wrongfulness" under 18 U.S.C. § 875(d) when, as here, the defendant stipulates that he has no plausible claim of right to the thing of value. *See* 180 F.3d at 70–71. Second, the special condition that Farooq seek retraction of articles he published about Jane Doe and John Doe has expired, so Farooq's challenge to that condition is moot. Finally, the special condition that Farooq seek approval from the district court before publishing further information about Jane Doe and John Doe does not violate the First Amendment under the circumstances here. Farooq pled guilty to extortion by threatening to publish nude images of Jane Doe, and he is a journalist who had published or threatened to publish information about her and John Doe in the past. So the district court acted within its broad discretion by imposing the narrowly tailored special condition requiring Farooq to obtain approval from the court before publishing any further information about them. We thus **AFFIRM**.

JOSHUA PHILIP BUSSEN (Brian A. Jacobs, *on the brief*), Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY, *for Defendant-Appellant*.

KAYLA C. BENSING (Amy Busa, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, New York, NY, *for Appellee*.

PARK, *Circuit Judge*:

Defendant-Appellant Khawaja Muhammad Farooq pled guilty to one count of extortion under 18 U.S.C. § 875(d) for threatening to disseminate nude photographs of Jane Doe if she did not return to a relationship with him. Farooq now appeals, arguing that the plea proceedings were defective because the district court did not explain the "wrongfulness" element of extortion under *United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999). He also challenges two special conditions of supervised release on First Amendment grounds: (1) a requirement that Farooq seek retraction of articles he published about Jane Doe and her brother-in-law, John Doe, and (2) a requirement that he seek approval from the district court before publishing any further information about them.

We conclude as follows: First, the plea proceedings were not defective because the district court correctly determined that Farooq understood the "nature of each charge" to which he pled. Fed. R. Crim. P. 11(b)(1)(G). *Jackson* does not require a separate explanation of "wrongfulness" under 18 U.S.C. § 875(d) when, as here, the defendant stipulates that he has no plausible claim of right to the thing of value. *See* 180 F.3d at 70–71. Second, the special condition that Farooq seek retraction of articles he published about Jane Doe and John Doe has expired, so Farooq's challenge to that condition is moot. Finally, the special condition that Farooq seek approval from the district court before publishing further information about Jane Doe and John Doe does not violate the First Amendment under the circumstances here. Farooq pled guilty to extortion by threatening to publish nude images of Jane Doe, and he is a journalist who had published or threatened to publish information about her and John

3

Doe in the past. So the district court acted within its broad discretion by imposing the narrowly tailored special condition requiring Farooq to obtain approval from the court before publishing any further information about them. We thus affirm.

## I.  BACKGROUND

A.  Facts[1]

Farooq met Jane Doe in 2013 when she traveled from Pakistan to the United States for business. They remained in touch and began a romantic relationship after she returned to Pakistan. They communicated over Skype and WhatsApp and had some accounts with shared passwords. In 2016, Farooq asked Jane Doe's family for permission to marry her, and the family refused. Jane Doe ended the relationship shortly after that. Farooq continued to contact Jane Doe, but she did not respond.

Farooq then began sending emails and text messages to Jane Doe's coworkers. He also sent individuals to Jane Doe's workplace to ask her to contact him. In early 2018, one of Jane Doe's coworkers told her that Farooq was asking Jane Doe to log on to a shared Skype account to see some photos. She logged on and saw sexually explicit photos that Farooq had taken of her without her consent. Farooq threatened to share the photos with her family, coworkers, and village if she did not call him. Farooq knew that Jane Doe is from a conservative village in Pakistan where women may be harmed or even killed if they are perceived to bring dishonor on their families.

---

[1] Unless otherwise noted, all facts are drawn from the Presentence Investigation Report ("PSR"), which the district court adopted in its entirety at sentencing.

Farooq's threatened disclosure of the photos thus caused Jane Doe substantial distress and fear.

Jane Doe shared what was happening with her brother-in-law John Doe. Farooq continued to send threatening messages to Jane Doe: "Don't treat anyone like a dog. When a dog becomes crazy, it bites and its poisonous bite can kill a person. . . . You treated me less than a dog. . . . You would not have listened to me, if I had not saved all your pictures." PSR ¶ 10. He also sent threatening messages to John Doe, stating that he would send the photos to John Doe's colleagues, get him fired, and "destroy" him. *Id.* ¶ 18.

At the time, Farooq worked as a journalist for a Pakistani publication and carried a United Nations press pass. He referenced his press access in his messages to Jane Doe and John Doe, including, for example, by stating to John Doe: "I have started the proceedings with a local TV channel in the US. I am requesting you to stop this non sense [sic] . . . otherwise this news will broadcast on CNN, Fox news and BBC London." District Ct. Doc. No. 59, Ex. 3. Farooq messaged one of Jane Doe's coworkers that "it's better for [Jane Doe] to talk to me. Otherwise I will post her nude pictures and whatever [John Doe] is saying about her, on all the university websites and social media." PSR ¶ 15. Farooq also contacted the Prime Minister of Pakistan, the Chief Justice of the Pakistani Supreme Court, the Consul General of Pakistan to the United States in New York, and the Chief Minister of Punjab with information about Jane Doe and John Doe.

Farooq's messages came to the attention of the FBI, and he was arrested in Brooklyn in 2019.

B.    Procedural History

The government charged Farooq with two counts of extortion with threats to injure Jane Doe and John Doe under 18 U.S.C. § 875(c) and two counts of extortion with threats to injure their reputations under 18 U.S.C. § 875(d).

1.    *The Plea Proceeding*

In June 2019, Farooq pled guilty to Count Two of the indictment—extortion of Jane Doe under 18 U.S.C. § 875(d).   At the plea hearing, he admitted the following:   "On September 16, 2018, I sent an e-mail from Brooklyn, New York to a woman in Pakistan called Jane Doe in the indictment and I threatened to send naked pictures of her to other men in Pakistan unless she came back to me." App'x at 208.   During the plea colloquy, Farooq's counsel had the following exchange with the district court:

> Defense counsel:   Your Honor, if I may add as a matter of law, there are two elements that I think are legal questions rather than factual.   I've discussed with Mr. Farooq, and he will stipulate, that the relationship that he sought to have with Jane Doe, if she complied with his requests, is a quote, "thing of value."
>
> The Court:   That's what I was going to ask you.
>
> Defense counsel:   And is also not something to which he was legally entitled.
>
> The Court:   So you would stipulate to the fact that this relationship meets the definition of thing of value for purposes of Section 875(d)?

Defense counsel: I would. And that his threat to send the pictures in exchange for that thing of value constitutes legal extortion.

*Id.* at 208–09. Farooq also stipulated that his "intention" was to make Jane Doe "feel that if she did not come back to [him, Farooq] would send the pictures to other men." *Id.* at 210.

Seven months later, Farooq, proceeding pro se, moved to withdraw his guilty plea, arguing that it was not voluntary and that the statements he made during the plea proceeding were false and coerced by his attorney. The district court denied Farooq's motion to withdraw the guilty plea because of the delay between his plea and the motion, the failure to raise any new evidence to support his claims of innocence, and the absence of evidence of coercion. *See United States v. Farooq*, No. 19-CR-100, 2020 WL 1083624, at *2–6 (E.D.N.Y. Mar. 6, 2020).

The district court also denied Farooq's subsequent motions to withdraw his guilty plea after reviewing transcripts that Farooq argued would show his innocence. The court concluded that the transcripts did not support his new theory that Jane Doe consented to the extortion to persuade John Doe to let her return to her relationship with Farooq.

2.     *Sentencing*

The district court sentenced Farooq to the maximum sentence of two years' imprisonment with one year of supervised release. The district court imposed two special conditions of supervised release at issue on appeal:

[1] The defendant shall endeavor to have retracted any newspaper or press article that he has facilitated the

7

publishing or posting of, either directly or indirectly, and that contains the true name or other personal identifying information, place of employment, or visual image of John Doe or Jane Doe.

[2] The defendant shall refrain from disseminating any information about Jane Doe or John Doe in any medium, either directly or indirectly, including through other individuals, absent seeking and obtaining permission from the Court.

District Ct. Doc. No. 142 at 5.

### 3. *Post-Sentencing Developments*

Farooq's initial term of supervised release was set to expire in April 2022. In March 2022, the district court extended that initial term to resolve Farooq's alleged violation of the conditions of his supervised release. Farooq pled guilty to one count of violating the conditions of supervised release by contacting John Doe. In November 2022, the district court sentenced Farooq to time served and imposed a renewed term of supervised release set to expire on February 9, 2023. The new term of supervised release included the special condition prohibiting dissemination of information about Jane Doe and John Doe, but it did not renew the condition requiring Farooq to seek retraction of articles he published about Jane Doe and John Doe.

## II. DISCUSSION

Farooq argues that the district court erred by not separately explaining the "wrongfulness" element of extortion to him during the plea proceeding. This argument is without merit. Federal Rule of Criminal Procedure 11 requires that the defendant understand the

"nature of each charge" against him.   Farooq's stipulations during the plea proceeding confirm that he understood the nature of the extortion charge under 18 U.S.C. § 875(d), including its "wrongfulness."

Farooq further challenges the special conditions of supervised release on First Amendment grounds.   First, the special condition requiring Farooq to seek retraction of articles he published is now moot.   Second, the special condition requiring the district court's approval before Farooq publishes information about Jane Doe and John Doe is narrowly tailored under the circumstances here.

A.   The Plea Proceeding

1.   *Legal Standards*

We review Farooq's challenge to the plea proceeding for plain error because he did not object below.   *United States v. Balde*, 943 F.3d 73, 95 (2d Cir. 2019).   To show plain error, there must (1) be an error that (2) is "clear or obvious, rather than subject to reasonable dispute," and (3) the error must have "affected the appellant's substantial rights," and (4) have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."   *Id.* at 96 (citation omitted).

Rule 11 of the Federal Rules of Criminal Procedure requires that the district court "inform the defendant of, and determine that the defendant understands, the . . . nature of each charge to which the defendant is pleading."   Fed. R. Crim. P. 11(b)(1)(G).   Rule 11 does not require that the judge personally "explain the elements of each charge to the defendant on the record" as long as "the record accurately reflects that the nature of the charge and the elements of

9

the crime were explained to the defendant by his own, competent counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *see also United States v. Torrellas*, 455 F.3d 96, 102 (2d Cir. 2006) ("[W]hile Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does not tell them precisely *how* to perform this important task in the great variety of cases that come before them." (cleaned up)).

Farooq pled guilty to extortion under 18 U.S.C. § 875(d), which states: "Whoever, with intent to extort from any person . . . any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee . . . shall be fined under this title or imprisoned not more than two years, or both." The statute does not include the word "wrongfulness," but we have clarified that § 875(d) contains an implicit wrongfulness element. *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999).

2. *Application*

The question here is whether Farooq understood the "nature of [the extortion] charge." Fed R. Crim. P. 11(b)(1)(G). Farooq argues that it was plain error here for the district court not to explain on the record the wrongfulness element as articulated by *Jackson*. But neither the extortion statute nor *Jackson* supports his argument.

As an initial matter, *Jackson* involved jury instructions, which are generally held to a higher standard than the district court's guidance during a plea proceeding. *See United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977) ("The contention that even in [a plea proceeding] the judge must deliver to the defendant the equivalent of

10

a jury charge finds no support in the language of [Rule 11] and runs counter to the legislative history.").

In any event, Farooq misreads *Jackson*'s analysis of "wrongfulness." The defendant in that case requested a jury instruction separately explaining the "wrongfulness" element of extortion. *Jackson*, 180 F.3d at 65. The district court rejected the proposed jury instruction because "threatening someone's reputation for money or a thing of value is inherently wrongful." *Id*. (citation omitted). We clarified, however, that a threat to reputation is not wrongful under § 875(d) if the person has a plausible claim of right to the thing of value. *Id*. at 67 ("For example, the purchaser of an allegedly defective product may threaten to complain to a consumer protection agency or to bring suit in a public forum if the manufacturer does not make good on its warranty."). So the jury instructions would have been proper if they made clear that the "threat to disclose was issued in connection with a claim for [a thing of value] to which she was not entitled or which had no nexus to a plausible claim of right." *Id*. at 71.

The record reflects that Farooq understood the wrongfulness of his conduct. He stipulated that the relationship he sought to have with Jane Doe is a "thing of value" and is "not something to which he was legally entitled." App'x at 209. Under *Jackson*, that amounted to an admission that Farooq's threat was "inherently wrongful." 180 F.3d at 71. And the threat to Jane Doe's reputation—*i.e.*, the dissemination of nude pictures—"had no nexus with any plausible claim of right." *Id*. at 70 (noting that threats of disclosure of "sexual indiscretions" are "inherently wrongful"). Thus, Farooq's stipulation makes clear that he understood the nature of the charge

11

against him, including the inherent wrongfulness of his conduct. We conclude that there was no plain error in his plea allocution.[2]

B.     The Conditions of Supervised Release

1.     *Legal Standards*

We review special conditions of supervised release for abuse of discretion.    *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013). But "[w]hen a challenge to a condition of supervised release presents an issue of law, we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion."    *Id*. (citation omitted).

In general, "a district court may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements."    *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (cleaned up).    Relevant factors include the "nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for "adequate deterrence," "protect[ing] the public from further crimes," and "provid[ing] the defendant with needed . . . correctional treatment in the most effective manner." *United States v. Bolin*, 976 F.3d 202, 210 (2d Cir. 2020) (quoting U.S.S.G.

---

[2] For the same reasons, the district court acted within its broad discretion to deny Farooq's motion to withdraw his guilty plea.    The district court determined that Farooq's "statement that everything [he] said during that plea proceeding was a lie" was not "credible" and that there was no "support in the record that [his] lawyer improperly pressured [him] into pleading guilty."    App'x at 399.

§ 5D1.3(b)(1)).   For fundamental liberty interests, the condition is "'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest."   *Id.* (quoting *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005)).

## 2.   *Retraction Requirement*

The special condition of supervised release requiring Farooq to seek retraction of articles he published about Jane Doe and John Doe has expired, so his challenge to this condition is moot.   In November 2022, the district court did not renew this condition when sentencing Farooq for the violation of his initial term of supervised release. Farooq asserts that his challenge to the condition is not moot because it is "capable of repetition, yet evading review."   *Turner v. Rogers*, 564 U.S. 431, 440 (2011).   We are unpersuaded.

Expiration or modification of a special condition of supervised release typically moots an appeal challenging that condition.   *See United States v. Juv. Male*, 564 U.S. 932, 936 (2011) (holding that there is no presumption of collateral consequences for an expired sentence); *United States v. Johnson*, 446 F.3d 272, 276 (2d Cir. 2006) (noting that an objection to a condition of supervised release became moot when the condition was modified).   The district court did not renew this condition, and there is no indication that it would reimpose it again.[3] Farooq's appeal of this condition is thus moot.

---

[3] Farooq's reliance on *United States v. Melton*, 666 F.3d 513 (8th Cir. 2012), is misguided.   That case involved different circumstances in which the defendant had been ordered multiple times to complete stays at a halfway house for time periods that were too short to challenge in court before they ended.   *See id.* at 515 n.3.

13

### 3. *Publishing Limitation*

Farooq also challenges the special condition of supervised release requiring him to seek the district court's approval before disseminating any information about Jane Doe and John Doe. Although this condition restricts Farooq's First Amendment rights, we conclude that it was within the district court's discretion to impose this condition under the circumstances here. The condition is closely related to Farooq's criminal conduct and is narrowly tailored to protect Jane Doe and John Doe in light of Farooq's history of threatening them and his background as a journalist.

As a general matter, conditions that would be unconstitutional "when cast as a broadly-applicable criminal prohibition" may be "permissible when imposed on an individual as a condition of supervised release." *Eaglin*, 913 F.3d at 96. The constitutional rights of defendants subject to conditions of supervised release may be limited. *See, e.g.*, *Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006) ("[W]e note that the First Amendment rights of parolees are circumscribed."); *Porth v. Templar*, 453 F.2d 330, 334 (10th Cir. 1971) ("[One on probation] forfeits much of his freedom of action and even freedom of expression to the extent necessary to successful rehabilitation and protection of the public programs.").

We recognize that the special condition of supervised release prohibiting Farooq from "disseminating any information about Jane Doe or John Doe in any medium . . . absent seeking and obtaining permission from the Court" is a content-based prior restraint on speech. *See United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (defining a prior restraint as a "judicial order that suppresses speech—or provides for its suppression at the discretion of

14

government officials—on the basis of the speech's content and in advance of its actual expression"). And there is "a heavy presumption against [the] constitutional validity" of "[a]ny imposition of a prior restraint." *Id.* at 310 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). We have thus vacated overly broad conditions of supervised release implicating First Amendment rights. *See, e.g.*, *Bolin*, 976 F.3d at 215–16 (vacating as unconstitutional condition of supervised release prohibiting defendant from engaging in internet speech "that promotes or endorses violence, unlawful activity, or any groups that espouse such ideas"). *But see, e.g.*, *United States v. Schiff*, 876 F.2d 272, 276–77 (2d Cir. 1989) (upholding as constitutional condition prohibiting association with groups advocating noncompliance with tax laws).

Under the circumstances of this case, the special condition is narrowly tailored. First, it is "reasonably related" to the "nature and circumstances" of Farooq's offense. U.S.S.G. § 5D1.3(b)(1). The charged conduct and the conduct to which Farooq pled guilty related to exposing Jane Doe's and John Doe's identities and disseminating information that would embarrass and harm them. Farooq pled guilty to emailing Jane Doe and "threaten[ing] to send naked pictures of her to other men in Pakistan unless she came back to [him]." App'x at 208. Farooq also contacted Jane Doe and John Doe both directly and indirectly through their coworkers. So the conduct covered by the special condition is closely related to the conduct for which Farooq was charged.

Second, the special condition is closely related to Farooq's "history and characteristics." U.S.S.G. § 5D1.3(b)(1). Farooq repeatedly violated court orders throughout the case, including

15

violating a family-court order of protection and contacting someone in Pakistan about John Doe. Throughout the district court proceedings, Farooq tried to publicize information about Jane Doe and John Doe against the district court's express orders. This included sending letters to the President of the United States and various government officials identifying both Jane Doe and John Doe and sending copies of allegedly published articles to the district court identifying Jane Doe and describing Farooq's relationship with her. Farooq also repeatedly alluded to or sought to introduce into evidence articles that named the victims and disclosed potentially harmful details about them. So the condition was closely related to Farooq's history of disseminating information about Jane Doe and John Doe, including in defiance of court orders.

Third, the condition is narrowly tailored because it restricts public dissemination of information only about Jane Doe or John Doe. It is not a broad prohibition on speaking about the case or criticizing the attorneys or the district court. *See United States v. Coleman*, No. 98-1299, 1999 WL 278878, at *2 (2d Cir. May 4, 1999) (explaining in dicta that prohibiting the defendant from criticizing the government "or anyone else" would "surely exceed a District Court's discretion"). The condition itself limits the restriction to "information about Jane Doe or John Doe." The district court explained the limited scope of the condition during the sentencing hearing, noting that the purpose was to "prevent Mr. Farooq from continuing to threaten [the victims] through media." App'x at 573. So the scope of the condition was limited to information about Jane Doe and John Doe.

Fourth, the condition is limited in duration. Upon Farooq's guilty plea to the violation of supervised release, the district court

16

imposed a new term of supervised release in November 2021 set to expire in February 2023—lasting approximately three months.

Finally, the condition still allows Farooq to seek permission from the district court to publish information about Jane Doe or John Doe.  In light of these limitations and the record before us, we conclude that it was within the district court's discretion to impose this special condition.

## III.   CONCLUSION

We have considered all of Farooq's remaining arguments and have found them to be without merit.  For the reasons set forth above, the judgment of the district court is affirmed.